UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NATALIA DANIELLE MIDDLETON,

　　　　　　　　Plaintiff,

　　　– against –

POLICE OFFICER CLAIRE INFANTE,

　　　　　　　　Defendant.

**OPINION & ORDER**

24-cv-8217 (ER)

Ramos, D.J.:

　　Natalia Danielle Middleton, proceeding *pro se*, filed a complaint on October 28, 2024, pursuant to 42 U.S.C. § 1983, asserting claims for excessive force and false arrest against police officer Claire Infante of the New York Police Department ("NYPD"). Doc. 1. Before the Court is Infante's motion for judgment on the pleadings and Ms. Middleton's motion for leave to file to file an amended complaint. Docs. 22, 48. For the reasons stated below, Infante's motion for judgment on the pleadings is DENIED without prejudice and Ms. Middleton's motion for leave to file an amended complaint is GRANTED.

## I.　　BACKGROUND

### A.　Factual Background

　　In early 2024, Ms. Middleton was living in an apartment in the Bronx. Doc. 1 at 3. On May 1, 2024, she decided that she no longer wanted to live in the apartment, and between 10:00 p.m. and 11:00 p.m., she attempted to leave with her one-year-old son. *Id.* Ms. Middleton's mother and brother tried to stop her, and they eventually called 911 for police assistance. *Id.* Two officers from the NYPD's 41st Precinct arrived, and Ms. Middleton and her mother each gave a statement to a male officer. *Id.* at 1–2. Neither

police officer informed Ms. Middleton that she was not free to leave. *Id.* Ms. Middleton then began walking away with her child, intending to return to the apartment. *Id.* At that point, a group of police officers, including Officer Infante, rushed toward her and her child. *Id.* Officer Infante put Plaintiff in a "chokehold" and handcuffed her. *Id.* Ms. Middleton states she was not read her rights nor informed of the grounds of her detention. *Id.* Ms. Middleton states that she suffers from PTSD due to the excessive force used by Officer Infante. *Id.* She further alleges that she was taken in handcuffs to the emergency room at Lincoln Medical Center, and was eventually involuntarily admitted to a psychiatric facility, where she remained until May 14, 2024. *Id.*

### B. Procedural Background

Ms. Middleton filed her *pro se* complaint on October 28, 2024. Doc. 1. She brings this action pursuant to 42 U.S.C. § 1983, asserting claims for excessive force and false arrest against Infante of the NYPD's 41st precinct. *Id.* She seeks compensatory damages for her emotional and physical harm, punitive damages for Infante's alleged unlawful actions, and injunctive relief "to prevent further violation[s] of civil rights by 41st precinct officers." *Id.* at 4.

On June 11, 2025, Infante filed a motion for judgment on the pleadings. Doc. 22. On August 19, 2025, Ms. Middleton filed six documents, one of which was styled as "Verified Declaration and Lawful Challenge to Respondent's Motion to Dismiss." Doc. 38.[1] On September 16, 2025, Infante filed her reply brief in support of her motion for judgment on the pleadings. Doc. 43.

---

[1] In addition to the "Verified Declaration and Lawful Challenge to Respondent's Motion to Dismiss," on August 19, 2025, Ms. Middleton filed a "Judicial Mandate for Preservation of Claims, Evidence and

2

On February 10, 2026, Ms. Middleton filed a motion for leave to file an amended complaint, which Infante opposed on February 24, 2026.  Docs. 48, 52.  On February 27, 2026, Ms. Middleton filed a "Supplemental Memorandum of Law in Support" of her motion for leave to file an amended complaint.   Doc. 55.

Also on February 27, 2026, Ms. Middleton filed a motion for leave to file an opposition to officer Infante's June 11, 2025 motion for judgment on the pleadings, arguing that she did not realize the motion was "fully briefed" and that her earlier submissions, while responsive to defendant's motion, did not constitute a comprehensive opposition addressing all legal and factual issues raised by defendant.  Doc. 54 at 1–3.  Ms. Middleton attached her proposed opposition brief.  *Id*. at 18–44.

On March 5, 2026, Ms. Middleton filed a reply in support of her motion for leave to amend the complaint.  Doc. 57.

## II.    DISCUSSION

The Court will first address the motion to amend.  *See GGC International Limited v. Ver*, No. 24 Civ. 1533 (JPC), 2025 WL 81319, at *1 (S.D.N.Y. Jan. 13, 2025) ("When a court is faced with [a] motion[ ] to dismiss one complaint and a motion for leave to file an amended complaint, the court may focus first on the motion for leave to amend because granting the motion for leave to amend moots the pending motion[ ] to dismiss.") (quoting *Cummins, Inc. v. New York Life Insurance*, No. 10 Civ. 9252 (TPG), 2012 WL 3870308, at *2 (S.D.N.Y. Sept. 6, 2012))).

---

Equitable Adjudication"; a "Notice of Obligation to Acknowledge and Record Delivered Instruments"; a "Constitutional Notice of Claim"; a "Notice of Claim and Declaration of Status"; and an "Affidavit of Beneficiary Standing in the State Claim."   Docs. 34–39.

### A. Motion for Leave to Amend the Complaint

#### 1. *Legal Standard*

Rule 15 of the Federal Rules of Civil Procedure allows a party to amend its complaint pursuant to the other party's written consent or the court's leave. Fed. R. Civ. P. 15. Rule 15(a) states that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Under Rule 15(a), "a motion to amend should be denied only if the moving party has unduly delayed or acted in bad faith, the opposing party will be unfairly prejudiced if leave is granted, or the proposed amendment is futile." *See Agerbrink v. Model Service LLC*, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016). As a general rule, leave to amend a complaint should be freely granted. *Jin v. Metropolitan Life Insurance Co.*, 310 F.3d 84, 101 (2d Cir. 2002). District courts have broad discretion in deciding whether to grant leave to amend. *Pasternack v. Laboratory Corp. of America*, 892 F. Supp. 2d 540, 549 (S.D.N.Y. 2012) (citation omitted).

The Court notes that Ms. Middleton is proceeding *pro se*. "A *pro se* litigant's papers must be construed liberally 'to raise the strongest arguments they suggest.'" *Jules v. Andre Balazs Properties*, No. 20-cv-10500 (LGS), 2023 WL 5935626, at *2 (S.D.N.Y. Sept. 12, 2023) (quoting *Publicola v. Lomenzo*, 54 F.4th 108, 111 (2d Cir. 2022)). The obligation to be lenient while reading a *pro se* plaintiff's pleadings "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. N.Y.S. Department of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). At the same time, *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006).

2.  *Analysis*

In her initial motion for leave to amend the complaint, Ms. Middleton states that the motion is made for "the limited purpose of correcting misidentified parties and correcting the lawful identity of the [Plaintiff], without altering the underlying facts or substantive claims asserted." Doc. 48 at 1. With respect to the misidentified party, Ms. Middleton writes that she "was unaware that, as a matter of law, the proper municipal [defendant] is the City of New York, rather than individual municipal employees or agencies" and as such, she wants to substitute the City of New York as the defendant. *Id.* at 2.[2] With respect to her lawful identity, Ms. Middleton argues that the original complaint is brought in the name of "Natalia Middleton," and not her full and lawful legal name "Natalia Danielle Middleton." *Id.* at 2.

Officer Infante opposes Ms. Middleton's request, arguing mainly that such an amendment would be futile. Doc. 52 at 1. With respect to the request to substitute the City of New York as defendant, Infante argues that: (1) "even liberally construed, [Ms. Middleton]'s [c]omplaint contains no allegations plausibly suggesting that a municipal policy or custom caused the purported constitutional violations. . . . [Ms. Middleton] does not identify any specific policy or custom or suggest the existence of 'widespread municipal practice,'" and (2) the proposed amendment would not "salvage or support any state

---

[2] Ms. Middleton also writes that she "has . . . learned that claims arising from the acts of NYPD officers must be brought against the City of New York, as NYPD is not a suable entity." Doc. 48 at 2. Ms. Middleton is correct, insofar as the police department is not a suable entity. See *Jenkins v. City of New York*, 478 F.3d 76, n.19 (2d Cir. 2007) ("The district court correctly noted that the NYPD is a non-suable agency"). However, lawsuits based on the actions of a police officer may be brought both against the City of New York and the officer in his individual capacity, though that officer may be protected by qualified immunity. *See e.g. Garnes v. City of New York*, No. 22-CV-01769 (ER), 2025 WL 605466, at *1 (S.D.N.Y. Feb. 25, 2025) (plaintiff bringing claims against the City of New York and the individual police officers who arrested him).

5

law claim against the City." *Id.* at 3.  With respect to updating Middleton's name, Infante argues that, because "Plaintiff's [initial] [c]omplaint already identifies her as 'Natalia Danielle Middleton' in the caption," the request is unnecessary.  *Id.*

After Infante's opposition was filed, Ms. Middleton filed two additional documents to support her motion:  a "Supplemental Memorandum of Law in Support" of the motion, Doc. 55, and a reply brief, Doc. 57.  In those documents, Ms. Middleton includes a host of new allegations, including that:  in the 911 call, her mother falsely alleged that a person she identified as "Natalia Middleton" had a history of Borderline Personality Disorder and posed a danger to herself and others; at no point did the responding officers request or examine any form of identification from Ms. Middleton, nor did they ask for her name; the officers did not attempt to verify whether she was the same person described in her mother's 911 call; the officers tackled her to the ground; and in documenting the incident, the NYPD created a report identifying her as "Natalia Middleton" with a birthdate that was incorrect.  Doc. 55 at 3–8; *see* Doc. 57 at 7–11.  Ms. Middleton further asserts that this incident "was not an isolated mistake . . . but reflects a pattern, practice and policy of the City of New York" and that there is a "systematic failure to verify identity before [police officers] execut[e] seizures, particularly in cases involving psychiatric allegations. . ."  Doc. 55 at 11; Doc. 57 at 7–11.  She argues that the City of New York has a policy or custom of failing to verify the identity of a person prior to seizure; that the city has a policy or custom of relying on unverified third-party allegations; that the city has failed to train officers on fourth amendment requirements; that the policy permits involuntary psychiatric detention and warrantless entry into private dwellings without due process; that the city failed to train officers on parental rights; and that the city is deliberately

indifferent to these constitutional risks.  Doc. 55 at 20–27; Doc. 57 at 7–11.[3]  She further re-alleges her assertion that it is necessary to correct her name from "Natalia Middleton" to "Natalia Danielle Middleton" to clearly and unambiguously identify the real party in interest.  Doc. 57 at 14.

The Second Circuit has held that leave to amend may be denied on the basis of futility when it is "beyond doubt that the plaintiff can prove no set of facts in support of his amended claims."  *Pangburn v. Culberston*, 200 F.3d 65, 71 (2d Cir. 1999) (citation and internal quotation marks omitted).  In determining whether an amendment is futile, the court evaluates the amended complaint "through the prism of a Rule 12(b)(6) analysis."  *Henneberry v. Sumitomo Corp. of America*, 415 F. Supp. 2d 423, 433 (S.D.N.Y. 2006).  Following this standard, courts accept a plaintiff's factual allegations as true and draw reasonable inferences in their favor.  *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  The trial court "has broad discretion in determining whether to grant leave to amend."  *Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000).

With respect to updating Ms. Middleton's name to "Natalia Danielle Middleton," the Court agrees with officer Infante, that such a request is not sufficient grounds to grant a motion to amend the complaint.  *See* Doc. 52 at 3.  Ms. Middleton's initial complaint already lists her full name as "Natalia Danielle Middleton" in the caption.  Doc. 1 at 1.  To the extent that Ms. Middleton wants her name to be updated in the docket, the Clerk of Court is respectfully directed to change plaintiff's name from "Natalia Middleton" to "Natalia Danielle Middleton."

---

[3] In her reply brief, Ms. Middleton also clarifies that she asserts "claims under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments to the United States" and that she "does not assert any state law claims."  Doc. 57 at 12.

With respect to Ms. Middleton's arguments concerning the liability of the City of New York, as a preliminary matter, while it is generally improper to consider new arguments in a reply brief; due to the liberal standard concerning motions for leave to amend a complaint, Ms. Middleton's *pro se* status, and concerns as to judicial economy,[4] the Court considers the new allegations raised in her supplemental memorandum and her reply brief.

*Monell* liability is a particular theory of liability for § 1983 claims against municipalities. *See Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694 (1978) ("[I]t is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983"); *see also Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.") (quoting *Monell*, 436 U.S. at 692). "[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (quotation marks and citation omitted).

Infante correctly identifies that the initial complaint did not make any allegation that Infante's conduct was pursuant to a policy, custom, or widespread municipal

---

[4] The Court notes that, if it were to deny Ms. Middleton leave to amend her complaint on the grounds that her reply brief includes additional proposed facts that were not mentioned in her initial brief; Ms. Middleton would be free subsequently to file another motion for leave to amend her complaint with those city-wide policy allegations.

practice. *See* Doc. 52 at 3 ("Indeed, [Ms. Middleton] does not identify any specific policy or custom or suggest the existence of a 'widespread' municipal practice . . ."); Doc. 1. Therefore, merely adding the City of New York as a defendant without updating any of the factual allegations would be legally insufficient to demonstrate *Monell* liability, and therefore futile. *See e.g. Megginson v. City of New York*, No. 23 Civ. 6798 (ER), 2025 WL 902644, at *9 (S.D.N.Y. Mar. 25, 2025) ("[Plaintiff] nowhere claims that any of the alleged constitutional violations took place as a result of a City policy, practice or custom, a failure to train or supervise its employees. . . . Therefore, [Plaintiff] has not adequately pleaded a *Monell* claim against the City, and his claims against it are dismissed.") (internal citations omitted).

However, it is clear from Ms. Middleton's reply and her "supplemental memorandum" that she now intends to amend her complaint to include allegations that her experience was a part of a city-wide policy, practice, custom, and a failure to train. *See* Docs. 55, 57. Deciding whether these allegations are sufficiently plausible to withstand a motion to dismiss or for judgment on the pleadings is premature, as Ms. Middleton's amended complaint is yet to be filed and Infante's arguments concerning futility are premised on an absence of allegations concerning a city policy, custom, or wide-spread practice. *See* Doc. 52; *see also Ciotti v. City of New York,* No. 23 CIV. 10279 (ER), 2025 WL 308022, at *21 (S.D.N.Y. Jan. 27, 2025) ("Mere allegations of a municipal custom, a practice of tolerating official misconduct, or inadequate training and/or supervision are insufficient to demonstrate the existence of such a custom unless supported by factual details."); *Megginson v. City of New York*, No. 23 Civ. 6798 (ER), 2025 WL 902644, at *8 (S.D.N.Y. Mar. 25, 2025) ("In the context of a motion to dismiss, 'a plaintiff must make

9

factual allegations that support a plausible inference that the constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policymaking authority for the municipality.') (quoting *Missel v. County of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009) (summary order)).[5]

Accordingly, Ms. Middleton's motion for leave to amend her complaint is GRANTED.

### B. Motion for Judgment on the Pleadings:

Because the Court has granted Ms. Middleton leave to amend her complaint, it denies the motion for judgment on the pleadings as moot. *See GGC International Limited*, 2025 WL 81319, at *1 ("[G]ranting the motion for leave to amend moots the pending motions to dismiss." (quoting *Cummins*, 2012 WL 3870308, at *2)). The motion is denied without prejudice. Infante is granted leave to renew the motion after Ms. Middleton files the amended complaint.

## III. CONCLUSION

For the reasons stated below, Infante's motion for judgment on the pleadings is DENIED without prejudice and Ms. Middleton's motion for leave to file an amended

---

[5] Infante also briefly argues that "requiring Defendant to re-brief the same legal arguments in response to unchanged allegations would needlessly duplicate prior motion practice, impose unnecessary prejudice, and delay the potential resolution of this action." Doc. 52 at 3.

The Court is sympathetic to those arguments; however, as a preliminary matter, the Second Circuit has asserted that "mere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Altowaiti v. Cissna*, 2020 WL 2036703, at *4 (S.D.N.Y. Apr. 28, 2020) (quoting *State Teachers Retirement Board v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)). Further, to the extent that Infante is concerned about additional motion practice, as the Court discusses below, Infante is granted leave to renew her motion for judgment on the pleadings after Ms. Middleton files her amended complaint.

complaint is GRANTED. Ms. Middleton is directed to file her amended complaint by April 30, 2026.

The Clerk of Court is respectfully directed to change plaintiff's name from "Natalia Middleton" to "Natalia Danielle Middleton," on the docket. The Clerk of Court is also respectfully directed to terminate the motions, Docs. 22, 48, 54.


It is SO ORDERED.


Dated:    March 25, 2026
          New York, New York

_____
          EDGARDO RAMOS, U.S.D.J.

11